# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARTHUR SPARKS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-7198** |
| **CORNEL HUBERT, HEAD WARDEN** | **SECTION "J"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE** as time-barred.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Arthur Sparks, is incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2] Sparks was charged by bill of information in Orleans Parish on June 29, 2001, with attempted armed robbery and as a felon in possession of a weapon.[3] The Louisiana Fourth Circuit Court of Appeal summarized the relevant facts of the case as follows:

> At trial Mr. Ambrose Mmonu, the manager of the Subway Shop at 4111 Bienville Street, testified that he was working at 10:15 a.m. on May 22, 2001, with his two employees when a man, later identified as the defendant, entered the shop. The man was wearing a white tee shirt, jeans, a cap, sunglasses, and white tennis shoes. He asked for a job application form. As Mr. Mmonu was reaching for the application, the man pulled out a gun. Mr. Mmonu described the gun as "short" and old. The man began shouting, "Give me all the money," and when Mr. Mmonu opened the cash register in compliance, the gunman said there was not enough money there. The gunman said he wanted to go to the safe. Mr. Mmonu directed one of his employees to take the gunman to the safe. When they went to the back of the shop, Mr. Mmonu ran out of the restaurant. He found his other employee was already outside and on the telephone reporting the incident. Within seconds, the robber came from around the back of the building and ran down Conti Street. A man in a truck with a police logo came by, and Mr. Mmonu told him of the robbery. The man began to follow the gunman. The man driving the truck called the police on his cell phone and reported their exact location. The police apprehended the defendant, and Mr. Mmonu identified him as the man who pulled out a gun and demanded the money from the cash register at the Subway Shop.
>     Ms[.] Cheneta Compton, an employee of the Subway Shop, testified that the shop had opened a bit early for the Jesuit students, but the first person in there was a man asking for a job application form. Her boss, Mr. Mmonu, was in the process of handing him a form when the man pulled out a gun. Ms[.] Compton immediately ran out of the front door. She did get a look at the gun which she

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 6/29/01.

described as old and rusty. She remembered the gunman wearing a white shirt, white hat, sunglasses, and blue jeans. Ms[.] Compton went into the nearby Dollar Zone Store and asked someone to call the police. When she walked outside again, she saw the gunman exiting the back of the Subway Shop. He was holding his hat in his hand. Ms[.] Compton said that the third employee, Ms. Latisha Jackson, no longer works for Subway.

Detective Chris Billiot testified that he arrested the defendant on the neutral ground near the corner of Jefferson Davis Parkway and Conti Street after receiving a call that a subway shop had been robbed. The detective described the robber as a bald-headed man wearing a dark shirt and dark pants. When the detective apprehended the defendant, he said, "Okay. Okay. But I didn't take any money." The defendant admitted he attempted to rob the Subway Shop. In the 500 block of North Scott Street a baseball cap, sunglasses, a gun, and a cigarette lighter were found. At trial the detective read a statement the defendant gave after he was arrested. In the statement, he said he needed money to pay his mother's electricity bill, and he intended to borrow it from a coworker but could not. As he came upon the Subway Shop, he found a gun on the neutral ground. He walked into the shop without a plan to rob the business, but he snapped. He then got nervous and ran outside without taking anything.

Mr. Eddie J. Logan, III, a carpenter for the NOPD, testified that on May 22, 2001 he was driving a police truck when he was flagged down on the corner of Carrollton Avenue and Conti Streets [sic] by a man who complained that his business had just been robbed. Mr. Logan drove down Conti Street looking for the man. As he drove near two warehouses on North Scott Street, he noticed a man wearing blue jeans and a navy blue shirt put something down into the bushes and then walk casually toward Conti Street.

Mr. Logan drove around the corner and then backed up, got out of his truck and went to the spot in the bushes to retrieve what had been placed there. He found a hat, sunglasses, a gun, and a cigarette lighter. Mr. Logan took the evidence to his truck and drove around looking for the man who set it down. When he did not find him right away, he turned on his radio and found where the [sic] Officer Billiot was. Mr. Logan turned the evidence over to him. Mr. Logan identified the defendant as the man he observed placing the evidence in the bushes.

The defendant, a longshoreman, testified that he lives with his mother. He has a prior conviction for manslaughter in 1989. His version of the events on May 22, 2001 is as follows. He was walking on Bienville Street toward his home when he was suddenly surrounded by policemen. He was ordered to get down on the ground and he was handcuffed. He was asked about a gun and told that the Subway Shop had just been robbed. He told them he had no gun and knew nothing of the robbery. He was taken to the police station, and from there he

> called his sister who had just been released from the hospital. His sister became hysterical when he told her he was charged with armed robbery. One of the detectives spoke to the defendant's sister and told her that if the defendant cooperated he would get a lenient sentence. The defendant told the court that he was guilty only of lying in his supposed confession when he told the officers that he tried to rob the Subway Shop. He explained that he made a false statement because he is a convicted felon and the police told him they had three witnesses who could identify him. He also said he has full custody of a year old daughter and son who was thirteen days old on May 22, 2001. The defendant said he thought by making a false statement he would receive only one or two years in prison.

State v. Sparks, 846 So.2d 1002 (La. App. 4th Cir. 2003) (Table); State Record Volume 1 of 4, Louisiana Fourth Circuit Court of Appeal Opinion, 2002-KA-2010, pp. 2-4, June 4, 2003.

Sparks proceeded to trial by jury for the attempted armed robbery charge on August 22, 2001.[4] The jury was unable to reach a verdict. A second trial commenced on September 20, 2001, and the jury found Sparks to be guilty as charged of attempted armed robbery.[5] The state trial court sentenced Sparks on September 27, 2001, to serve 13 years in prison on that charge without benefit of parole, probation or suspension of sentence.[6]

---

[4] St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 8/22/01; St. Rec. Vol. 2 of 4, Trial Transcript, 8/22/01; St. Rec. Vol. 4 of 4, Jury Verdict, 8/22/01.

[5] St. Rec. Vol. 1 of 4, Trial Minutes (4 pages), 9/20/01; Verdict Form, 9/20/01; St. Rec. Vol. 2 of 4, Trial Transcript, 9/20/01; St. Rec. Vol. 4 of 4, Jury Verdict, 9/20/01.

[6] St. Rec. Vol. 1 of 4, Sentencing Minutes, 9/27/01; St. Rec. Vol. 2 of 4, Sentencing Transcript, 9/27/01.

The State thereafter charged Sparks as a multiple offender.[7] At a hearing held October 18, 2001, the state trial court found Sparks to be a second offender and sentenced him to serve 27 years without benefit of probation or suspension of sentence.[8] The State entered a nolle prosequi as to the felon in possession of a firearm charge.[9]

Sparks's conviction became final five days later, on October 25, 2001, because he did not move for or file a notice of appeal or seek reconsideration of his sentence. See Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. P. art. 914[10]); La. Code Crim. P. art. 13 (weekends and holidays not included in a calculation of period when it would otherwise be the last day of the period).

Five months later, Sparks's counsel filed a motion for an out-of-time appeal, which was granted by the state trial court on April 5, 2002.[11] On appeal, Sparks argued

---

[7]St. Rec. Vol. 1 of 4, Minute Entry, 10/12/01.

[8]St. Rec. Vol. 1 of 4, Multiple Bill Hearing Minutes, 10/18/01; St. Rec. Vol. 2 of 4, Multiple Bill Hearing Transcript, 10/18/01.

[9]Id.

[10]La. Code Crim. P. art. 914 was later amended by La. Acts 2003, No. 949, § 1, to require that a criminal defendant move for leave to appeal within 30 days of the order or judgment that is being appealed or of a ruling on a timely motion to reconsider a sentence. Failure to move timely for appeal under Article 914 renders the conviction and sentence final at the expiration of the period for filing the motion for appeal. See State v. Counterman, 475 So.2d 336, 338 (La. 1985).

[11]St. Rec. Vol. 1 of 4, Motion for Out-of-Time Appeal, 4/5/02; Minute Entry, 4/5/02.

that the identification evidence was insufficient to support the verdict.[12] The Louisiana Fourth Circuit Court of Appeal affirmed the conviction on June 4, 2003, finding no merit to the claim.[13] The court also modified Sparks's sentence to reflect that it was to be served without benefit of parole, probation or suspension of sentence.

Sparks filed a timely[14] writ application with the Louisiana Supreme Court on July 7, 2003.[15] The court denied the application without reasons on January 16, 2004.[16]

Seventeen months later, Sparks filed an application for post-conviction relief in which he raised two grounds for relief:[17] (1) He was denied equal protection when the state trial court refused to provide his trial counsel with a copy of the mistrial transcript

---

[12]St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 2002-KA-2010, 6/4/03; State v. Sparks, 846 So.2d at 1002 (Table).

[13]Id.

[14]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a writ application in the Louisiana Supreme Court. The thirtieth day was Friday, July 4, 2003, a recognized legal holiday. La. Code Crim. P. art. 13 (weekends and holidays not included in a calculation of period when it would otherwise be the last day of the period). His writ application was postmarked on the next business day, Monday, July 7, 2003. The State's suggestion that this writ application was not timely filed is rejected. See St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2003-KO-2053, 7/23/03 (postal meter 7/7/03); St. Rec. Vol. 3 of 4, La. S. Ct. Writ Application, 03-KO-2053, 7/23/03 (postal meter 7/7/03).

[15]St. Rec. Vol. 1 of 4, La. S. Ct. Letter, 2003-KO-2053, 7/23/03 (postal meter 7/7/03); St. Rec. Vol. 3 of 4, La. S. Ct. Writ Application, 03-KO-2053, 7/23/03 (postal meter 7/7/03).

[16]State v. Sparks, 864 So.2d 627 (La. 2004); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2003-KO-2053, 1/16/04.

[17]St. Rec. Vol. 4 of 4, Uniform Application for Post-Conviction Relief, signed 6/21/05. The record does not contain a file stamped copy. The signature date is presumed to be the earliest date on which Sparks could have submitted the pleading for mailing to the state trial court.

to use during the second trial. (2) He had ineffective assistance of counsel at the second trial because his trial counsel was denied access to the mistrial transcript, which rendered counsel ineffective in challenging the State's case. The record does not contain a ruling from the state trial court on Sparks's application.

On August 9, 2006, Sparks filed an application for a writ of mandamus with the Louisiana Fourth Circuit to have the state trial court rule on his pending application for post-conviction relief.[18] The appellate court denied the application on August 30, 2006, after reviewing the application for post-conviction relief and finding that Sparks had not established that he was entitled to relief.[19] Sparks's subsequent writ application to the Louisiana Supreme Court was also denied without reasons on August 15, 2007.[20]

## II.   FEDERAL HABEAS PETITION

On October 23, 2007, Sparks filed a petition for federal habeas corpus relief in which he raised two grounds for relief:[21] (1) He was denied equal protection when the

---

[18] St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2006-K-1039, 8/9/06.

[19] St. Rec. Vol. 3 of 4, 4th Cir. Order, 2006-K-1039, 8/31/06.

[20] St. Rec. Vol. 3 of 4, La. S. Ct. Writ Application, 06-KH-2516, 10/19/06 (postal meter 10/2/06); State ex rel. Sparks v. State, 961 So.2d 1153 (La. 2007); La. S. Ct. Order, 2006-KH-2516, 8/15/07. I note that this writ application was also timely under La. Code Cirm. P. art. 922. As discussed above, Sparks had 30 days from issuance of the appellate order on August 31, 2006, to mail or file his Louisiana Supreme Court writ application. The last day of that period was Saturday, September 30, 2006. Sparks's application was postal metered on the next business day, Monday, October 2, 2007.

[21] Rec. Doc. No. 1.

7

state trial court refused to provide his trial counsel with a copy of the mistrial transcript to use during the second trial. (2) He had ineffective assistance of counsel at the second trial because his trial counsel was denied access to the mistrial transcript, which rendered counsel ineffective in challenging the State's case.

The State filed a response in opposition to the petition, alleging that Sparks's federal petition was not timely filed.[22]

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Sparks's petition, which, for reasons discussed below, is deemed filed in this federal court on September 13, 2007.[24]

---

[22]Rec. Doc. No. 6.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State has alleged, and my review of the record reflects, that Sparks's petition is not timely filed and should be dismissed for that reason.

IV.    STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[25] Duncan v. Walker, 533 U.S. 167, 179-80

---

F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Sparks's petition was filed by the clerk of court on October 23, 2007, when the filing fee was paid. Sparks signed the petition on September 13, 2007. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. See Cousin, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

[25]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
   A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
   B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
   C.    the date on which the constitutional right asserted was initially

(2001). Sparks's conviction became final on October 25, 2001, when he did not timely appeal or seek reconsideration of his sentence. The fact that Sparks was later granted an out-of-time appeal does not change the finality of his conviction for purposes of the AEDPA's limitation period. Salinas v. Dretke, 354 F.3d 425, 430 (5th Cir.), cert. denied, 541 U.S. 1032 (2004) (the granting of a request for out-of-time review tolls the AEDPA limitations period, but it does not restart the running of that period); McGee v. Cain, 104 Fed. Appx. 989, 991-992 (5th Cir. 2004) (applying Salinas rationale to Louisiana out-of-time writ application).

Therefore, under a literal application of the statute, Sparks had until October 25, 2002, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only

---

<pre>
                    recognized by the Supreme Court, if the right has been newly
                    recognized by the Supreme Court and made retroactively
                    applicable to cases on collateral review;  or
        D.          the date on which the factual predicate of the claim or claims
                    presented could have been discovered through the exercise of
                    due diligence.
</pre>
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Sparks has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in court decisions. See United States v. Wynn, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); Fisher, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); Cantu-Tzin, 162 F.3d at 300 (State's alleged

failure to appoint competent habeas counsel did not justify tolling); Davis, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the

> time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

As stated above, Sparks's conviction became final on October 25, 2001. The one-year limitations period began to run on October 26, 2001, and did so for 161 days, until April 5, 2002, when his counsel moved for the out-of-time appeal. The appeal remained pending for tolling purposes from that date, April 5, 2002, until resolution of the related Louisiana Supreme Court writ application on January 16, 2004.[26]

---

[26] As noted by the State, the out-of-time appeal was outside of the line of direct review, and Sparks is not entitled to further tolling under Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000). Pursuant to Salinas and McGee, discussed above, the out-of-time appeal did not affect the finality date of Sparks's conviction.

The one-year limitations period began to run again on January 17, 2004, and did so for the remainder of the AEDPA period, without interruption, until Saturday, August 7, 2004, or the next business day, Monday, August 9, 2004, when it expired.  Sparks had <u>no</u> properly filed state post-conviction or other collateral review pending during that time.

In fact, the record contains <u>no</u> state court filings of any kind by Sparks during the 17-month period between January 17, 2004, when the Louisiana Supreme Court denied his writ application, and June 21, 2005, when he submitted his application for post-conviction relief to the state trial court.  This later filed application for post-conviction relief has no effect on the timeliness calculation.  <u>Scott v. Johnson</u>, 227 F.3d 260, 263 (5th Cir. 2000).

Sparks's federal petition is deemed filed on September 13, 2007, which is more than three years after expiration of the AEDPA filing period.  Thus, his petition must be dismissed as time-barred.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Arthur Sparks for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __12th__ day of March, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE